IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RANDY WAYNE COOK, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-0026 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY
## PETITION FOR WRIT OF HABEAS CORPUS

Came for consideration the Petition for Writ of Habeas Corpus filed by petitioner

RANDY WAYNE COOK. By his habeas application, petitioner challenges his February 16,

2009, conviction for aggravated sexual assault of a child younger than 14 years of age out of the

181st Judicial District Court of Randall County, Texas, and the resultant life sentence. *See State v.

Cook*, No. 14,972. For the reasons set forth below, it is the opinion of the undersigned United

States Magistrate Judge that the petition be DENIED.

I.
FACTS AND PROCEDURAL HISTORY

On February 19, 2003, petitioner Randy Wayne Cook was charged by indictment in

Cause No. 14,972 with aggravated sexual assault in violation of Texas Penal Code

§ 22.021(a)(1)(B). Petitioner was released on bond in May of 2003. He failed to appear for a

court date in 2004, fled the jurisdiction, and was eventually discovered living in Germany.  On

January 8, 2009 petitioner traveled to the Amarillo International Airport where he was arrested.

At trial, petitioner's daughter testified petitioner sexually abused her from the time she

was in third grade until she was 12, when petitioner moved away.  The victim's testimony was

corroborated by the testimony of a sexual assault nurse examiner that trauma consistent with the

alleged sexual abuse was present.  The state also introduced evidence through the testimony of an

outcry witness and a recorded phone call between petitioner and his daughter during which

petitioner made statements that could be construed as incriminatory.  The prosecution presented

evidence of petitioner fleeing the country and argued petitioner's flight was evidence of

consciousness of guilt. On April 9, 2009, a jury found petitioner guilty and assessed punishment

at life in prison.

Petitioner filed a motion for new trial on May 7, 2009, and the trial court certified

defendant's right to appeal on May 17, 2009.  Petitioner appealed to the intermediate court of

appeals, challenging the trial court's failure to require a finding of "voluntariness" before the jury

could consider the tape-recorded calls petitioner made to his daughter in 2003.  On March 9,

2010, the court of appeals remanded the case to the trial court to allow petitioner's counsel to

withdraw and to allow the trial court to appoint new counsel for petitioner after petitioner's

initial appellate counsel left private practice to work for the Randall County District Attorney's

Office. The court of appeals affirmed the judgment of the trial court in an unpublished opinion

issued on March 9, 2010.  Cook filed a petition for discretionary review with the Texas Court of

Criminal Appeals on December 3, 2010, which was refused.  Petitioner then filed a state

Application for Writ of Habeas Corpus, case number WR-76,550-01, raising the same claims he

raises in this federal action.  The Court of Criminal Appeals denied the state application without written order on December 7, 2011.

Petitioner filed this Petition for a Writ of Habeas Corpus on January 31, 2012.  On May 11, 2012, respondent filed an answer arguing the federal habeas petition should be denied.

II.
PETITIONER'S CLAIMS

Petitioner alleges his conviction and sentence violate his rights under the United States Constitution because:

1.   Petitioner received ineffective assistance of counsel when trial counsel:

      A.   Failed to object to references in the prosecutor's opening statement about venire members' personal accounts of sexual abuse made during voir dire;

      B.   Opened the door to otherwise inadmissible testimony from the victim's mother;

      C.   Failed to object to hearsay evidence;

      D.   Failed to file a motion in limine to exclude and then failed to object to evidence petitioner was seeking German citizenship;

      E.   Failed to object to evidence of extraneous offenses concerning information provided to a bail bondsman and evidence of bail skipping;

      F.   Elicited or opened the door to evidence of petitioner's post-arrest silence; and

      G.   Failed to file a motion in limine to exclude and then failed to object to a portion of recorded evidence in which petitioner mentioned his past drug use.

2.   Petitioner received ineffective assistance of counsel on appeal because appellate counsel:

      A.   Failed to raise the issue of the trial court wrongly excluding

evidence of a prior sexual assault of the victim; and

B.      Failed to raise the issue of the trial court impermissibly setting out
petitioner's flight for extra consideration in the jury charge.

III.
AEDPA

This federal petition was filed after the April 24, 1996, effective date of the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA). Consequently, the provisions of the AEDPA

apply to this case.

Under 28 U.S.C. § 2254(d), a federal writ of habeas corpus on behalf of a person in

custody under a state court judgment shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless the prior adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established federal law, as determined by the
Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision adjudicated on the merits in state court and based on a factual

determination will not be overturned unless it is objectively unreasonable in light of the evidence

presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct.

1029, 1041, 154 L. Ed. 2d 931 (2003). Section 2254(e)(1) provides that a determination of a

factual issue made by a state court shall be presumed to be correct. The petitioner has the burden

to rebut the presumption of correctness by clear and convincing evidence. *Hill v. Johnson*, 210

F.3d 481, 485 (5th Cir. 2000). When the Texas Court of Criminal Appeals denies relief in a state

habeas corpus application, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim."); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

## IV.
## EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

By his first ground, petitioner claims his trial counsel was ineffective. The proper standard for judging petitioner's contention is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. If the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution the performance was deficient. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91, 104 S. Ct. at 2066. This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S.__, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S.__, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. Specifically, to prove prejudice a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law, and presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S.___, 134 S.Ct. 10, 187 L. Ed. 2d 348 (2013). The absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and cannot establish that performance was deficient. *Id.* Petitioner Cook's ineffective assistance of counsel claim was adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 1029 (2003). A state-court factual determination is not unreasonable merely because the federal

habeas court would have reached a different conclusion in the first instance. *Burt*, 134 S. Ct. at 15.

Although counsel for petitioner has submitted a well-argued brief, the majority of petitioner's claims of trial counsel's ineffectiveness, with the possible exception of opening the door during the cross-examination of the victim's mother, which did not result in prejudice, amount to what can be described as non-critical evidentiary issues. Petitioner invites the Court to do that which it cannot, which is to find inadequate representation by judging counsel's strategic decisions " with the benefit of hindsight." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Further, while these arguments may have been more persuasive during petitioner's state habeas proceedings, the state court rejected the claims on the merits, and petitioner has not met his burden for federal habeas relief, which is a higher burden under the AEDPA.

### A. Failure to Object to Prosecutor's Opening Statement

Petitioner alleges trial counsel was ineffective because he did not object to the prosecutor's opening statements when the prosecutor referenced accounts of abuse related by venire members during voir dire.

During voir dire, past sexual abuse was discussed for the purpose of excluding jurors who, because of their past experiences, would be unable to render an unbiased verdict. Several venire members shared accounts of sexual abuse experiences suffered by them or their relatives, including descriptions of how the victim waited to come forward because of fear and embarrassment. During prosecutor's opening statement the prosecutor said, "You've all heard [of abuse victims waiting to report their abuser] before. Yesterday morning from the five people that said they were victims." Petitioner contends this statement was used to bolster the future

testimony of the victim by offering an explanation as to why she waited to come forward with her sexual assault allegations.

The statements by venire members which were alluded to constituted information outside of the record evidence, and, if used to bolster the credibility of the state's witness, were not admissible. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). Counsel's failure to object, however, has not been shown to rise to the level of ineffectiveness required to warrant federal habeas relief. This Court is bound to give appropriate deference to the state habeas decision and by the presumption of correctness given to the judgments of the state courts. It is not unreasonable, as a matter of trial strategy, for an attorney to refrain from objecting to opening or closing statements unless the comments are significantly prejudicial. Interrupting an attorney during an opening statement risks the possibility of annoying the jurors and aligning them against the objecting attorney. Likewise, objecting may create the appearance the attorney is attempting to hide something. Lastly, but importantly, objecting can have a tendency to focus the jury on the objected-to statement. As such, it can be sound trial strategy not to object unless the comments are egregious.

Where the information, if heard, is likely to have only a minimal effect on the minds of the jurors, and where the benefit of excluding the evidence could be offset by any of the factors set out above, it can be legitimate trial strategy to not object. Given the brevity of the prosecutor's statements, it was arguably sound trial strategy to forgo objecting to the statements. *See, e.g.*, *Cunningham v. Wong*, 704 F.3d 1143, 1160 (9th Cir. 2013) ("withholding objections to an opponent's opening statement is acceptable defense strategy."); *Perkins v. McKee*, 411 F. App'x 822, 829 (6th Cir. 2011) (failure to object to opening statement not prejudicial); *Pisciotti*

*v. Washington*, 143 F.3d 296, 301 (7th Cir. 1998) (improper opening statement argument does not create prejudice where judge advised jury that statements were not evidence); *Seehan v. State of Iowa*, 72 F.3d 607, 610 (8th Cir. 1995) (sound trial strategy to "avoid offending or alienating the jury").

Unlike in the cases cited by petitioner where the bolstering occurred during closing arguments and would be one of the last things the jury would hear before deliberating, the objectionable statement occurred during opening statements and was less prejudicial. As trial counsel stated in his affidavit, an opening statement is not evidence, and the jurors had already heard the complained-of statements during voir dire. No other similar outside-the-record evidence was presented at any other point in the trial, and the statements from voir dire were never mentioned again. Given the brevity of the statements and the lack of any other reference to these statements, petitioner cannot have been prejudiced because there is not a reasonable probability the outcome of the proceedings would have been different if trial counsel had objected.

This Court is bound by the doubly deferential standard which applies to ineffective assistance of counsel claims following a disposition of the claim in a state habeas proceeding. Petitioner has not shown the state court decision denying relief was unreasonable, and because valid strategic reasons existed not to object, this Court does not find counsel was ineffective for failing to object.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's first subpart is without merit.

### 2. Opening the Door to Otherwise Inadmissible Statements

Petitioner next asserts trial counsel was ineffective for opening the door to inadmissible hearsay evidence. The victim did not immediately report the sexual abuse and delayed reporting it to her mother even after she reported it to her Aunt. Subsequently, the victim did inform her mother that petitioner had "raped her" on a number of occasions.

During the prosecution's case-in-chief, the prosecutor asked the victim's mother, Cassi Wells, what the victim had told her about the abuse. Defense counsel objected, and the court sustained the objection. During cross examination, trial counsel asked the victim's mother if she (Wells) had stated that the victim would not give her any details of the abuse. The court ruled this opened the door to evidence of what the victim had later told her mother regarding the sexual assaults. The prosecutor then elicited this inculpatory information on redirect examination.

Trial counsel was of the opinion the question asked did not open the door. As trial counsel explained in an affidavit, his question challenged the credibility of the victim by inquiring into whether she had given her mother any *details* regarding the sexual abuse. Trial counsel did not feel this question opened the door to hearsay evidence of what the victim specifically said to her mother. Even if erroneous, trial counsel's position is not unreasonable.

In any event, assuming trial counsel's cross examination question did, in fact, open the door, the state court was not objectively unreasonable in denying relief. Cook has failed to demonstrate prejudice. In order to demonstrate prejudice petitioner must show that, but for counsel's error, the outcome of the proceeding would have been different. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). The evidence that the victim of the crime had told people that petitioner had "raped her . . . over a period of years" was properly admitted through witnesses

other than her mother.  The nurse who performed the sexual assault investigation testified that

her examination indicated sexual contact on multiple occasions.  Likewise, the nurse testified the

victim told her "My dad raped me. He started when I was in 4th grade till one and a half years

ago."   Amber Zenor, the outcry witness, testified the victim had told her petitioner raped her

every time she was with petitioner.  The victim's mother's testimony was cumulative of both of

these witnesses and was less detailed and less damaging.  The complained of testimony cannot be

said to have caused petitioner prejudice.

Petitioner has not overcome the AEDPA deference afforded to the state court decision

denying habeas relief.  Petitioner's second subpart is without merit.

### 3.  Failure to Object to Statement Petitioner is "Biggest Liar She Knows"

Petitioner next alleges counsel was ineffective during his cross examination of the victim

for eliciting and then failing to object to certain testimony from the victim.  Trial counsel

established that the victim never told Michelle, petitioner's wife, about the abuse because

Michelle would think she was lying.  Counsel then  asked the victim, "Why did you think that

Michelle would think that you were lying."  The victim responded: "I don't know.  She –she said

I was always like my dad, and my dad's the biggest liar she knows."  Petitioner's contention that

this statement was inadmissible hearsay under Texas Rule of Evidence 802 is correct.  Petitioner,

however, has failed to show the state court was objectively unreasonable in denying relief.

An unprompted, unresponsive answer to a question does not, per se, render counsel's

performance ineffective, and the cases petitioner cites are distinguishable.  *See Miles v. State*,

644 S.W.2d 23, 25 (Tex. App.—El Paso 1982, no writ) (holding trial counsel should have

researched his client's history before asking accused "if he had ever been in any trouble before"

when the accused had been arrested four times); *Riascos v. State*, 792 S.W.2d 754, 757-58 (Tex. App.—Houston[14th Dist.] 1990, pet. ref'd) (holding counsel was ineffective for failing to object to the use of race and national origin as a focal point of the prosecution, and for allowing the prosecution to introduce evidence of extraneous offenses); *Brown v. State*, 974 S.W.2d 289, 293 (Tex. App.—San Antonio 1998) (holding trial counsel was ineffective for introducing evidence of defendant's drug use). The state court did not reach an objectively unreasonable decision in deciding counsel was not ineffective merely because a witness made an unexpected and/or unprompted response. While the ability to control a witness is an important skill for a trial lawyer, even the most adeptly formed question is not impervious to a non-responsive answer. Attorneys simply cannot control every statement out of a witness's mouth. Even if this Court were to determine trial counsel could have used greater care in forming his question and should have avoided asking the question in an open-ended manner, this particular question was not so poorly formed that it would cause trial counsel's performance to be labeled ineffective. Trial lawyers act in real time, making decisions quickly. What may appear to be an incorrect decision when looking at a cold record after the fact may have appeared to be the best choice during the trial. Trial lawyers are not required to make perfect decisions, merely competent ones, and this decision was within the range of competence.

Further, petitioner has failed to show prejudice. This was an isolated reference by the victim to something her step-mother had said. It was not emphasized and has not been shown to have had any effect on the outcome of the trial. As discussed in more detail in part 5 below, petitioner's truthfulness was not an issue during the guilt/innocence portion of the trial. In addition, the testimony may have been of some benefit to petitioner because it called into

question the victim's character for truthfulness, which was the primary issue during the trial.

Regarding trial counsel's failure to object to the testimony, petitioner contends trial counsel's proffered reason for not objecting at trial, de-emphasizing the testimony, is inadequate because trial counsel made other objections at trial. Petitioner's contention, however, ignores the reality of trial. Attorneys frequently decide whether to object or not based on various issues of strategy, including a desire not to emphasize damaging evidence. *See, eg, Richard v. Whitley*, No. 93-3627, 1995 WL 71043, at *3-4 (5th Cir. Jan. 25, 1995). While in one instance trial counsel may wish to de-emphasize certain testimony by not drawing attention to it, in another instance he may raise an objection because not objecting would only open the door to additional unfavorable evidence. This Court is bound to defer to both the strategy of trial counsel and the decision of the state court. It was not unreasonable for the state habeas court to decide trial counsel was not ineffective for not objecting as a matter of trial strategy.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's third subpart is without merit.

### 4. Failure to Limit Testimony Regarding German Citizenship

In his fourth subpart, Petitioner Cook claims trial counsel was ineffective for failing to limit testimony about petitioner's attempts to become a German citizen. At trial, a United States Deputy Marshal testified that "we'd also heard he was trying to become a German citizen." Cook claims this evidence was hearsay, irrelevant, and unduly prejudicial.

Respondent argues the statement was not hearsay because the statement was not offered for the truth of the matter asserted. Under Texas Rule of Evidence 801(d), "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." If the complained-of evidence was not offered for the truth of the matter asserted, the evidence was not hearsay. The prosecutor had asked the marshal whether she had checked the passport records and the marshal responded, by way of explanation, that she had checked records with the "German Consulate" because the marshals office had heard he might be applying for German citizenship. The testimony arguably concerned the marshal's reason for checking the records with the German Consulate and was not necessarily offered to show petitioner had actually applied for German citizenship. Testimony regarding background information used to explain the actions of investigators is not hearsay where it is offered only to show how police investigated a crime. *United States v. Johnston*, 127 F.3d 380, 394 (5th Cir. 1997). If this evidence was offered for background or explanatory purposes, any hearsay objection on the part of petitioner's trial counsel would have been meritless

If, in fact, the evidence was objectionable as inadmissible hearsay, the failure to object does not form the basis for relief on state habeas, much less entitle petitioner to relief on federal habeas review. Any mention of petitioner allegedly seeking German citizenship was tangential to the crime he was convicted of, and was cumulative of the evidence of flight, which was more damaging and which was admissible.

In the next portion of his fourth subpart, petitioner argues trial counsel should have objected to the evidence on the basis that it was irrelevant. However, a jury can consider flight "as tending to establish guilt." *United States v. Martinez*, 190 F.3d 673, 678 (5th Cir. 1999). Petitioner's presence in Germany was evidence he had fled, and the evidence petitioner had used a name different than his own in traveling to and around Germany demonstrated an intent to flee

and/or avoid apprehension.  To show petitioner used a different name to travel to Germany it was necessary to exclude petitioner's use of his given name, and this was established by showing the abscence of "applications" and "crossings" under petitioner's given name.  The reason the marshal had searched the database laid the factual predicate for her discovery that petitioner had not used his given name to travel to and around Germany.  The evidence was relevant for that purpose.

Petitioner also argues that if the evidence is deemed to have been relevant, the court should have excluded it as more prejudicial than probative, classifying the evidence as showing petitioner was not patriotic.  Generally, information showing how a defendant is located is "highly probative."  *United States v. Dunigan*, 555 F.3d 501, 508 (5th Cir. 2009).  Petitioner cites a Texas Court of Criminal Appeals case in which the court held references to an accused's German citizenship were "inflammatory and were calculated at such time to unfairly influence the jury against the appellant."  *Marx v. State*, 150 S.W.2d 1014, 1017 (Tex. Crim. App. 1941).  That case was in a different time, however, and the court's opinion turned on the German government's "concerted effort to destroy [democracy] throughout the earth" and the German citizenry's blind following of Hitler.  *Id.*  The court did not create a rule where any references to being (or becoming) a foreign citizen are per se inadmissible.  Instead, the purpose of the rule was case-specific, and the rationale turned entirely on the type of government in power in Germany at the time of World War II.  Any references to petitioner's affiliation with present day Germany would not have the same prejudicial effect.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief.  Petitioner's fourth subpart is without merit.

*5. Failure to Object to Testimony About False Contact Information to Bail Bondsman*

Petitioner claims trial counsel erred when he failed to object to evidence petitioner had given false information to the bail bondsman. Petitioner asserts failing to object allowed evidence of petitioner's past bad acts to be introduced. Texas Rule of Evidence 404 prohibits using evidence of past crimes or bad acts to demonstrate conduct in conformity therewith. Tex. R. Evidence 404. Petitioner also refers to Rule 608, but Rule 608 applies to attacking the credibility of witnesses, not a non-testifying accused, and respondent does not rely on Rule 608 as a basis for admissibility.

In this case, the evidence was not admitted to show bad conduct. The testimony was relevant as evidence of flight and to show the reason the bail bondsman involved the U.S. Marshals office. The witness from the bail bond company explained that after petitioner failed to appear for a court date, the bondsman attempted to locate him. But when the bondsman attempted to locate him, he found petitioner had moved without updating the location of his residence and that the phone numbers provided for his references were not accurate. When the bondsman was unable to locate petitioner, the bondsman called the U.S. Marshals office. References to petitioner Cook's alleged "bad conduct" were incidental to the bondsman's explanation of why he involved the U.S. Marshal.

Even if this testimony was objectionable and did lead the jury to believe petitioner possessed the bad character trait of prevarication, it is likely trial counsel was able to either cure this on cross examination or minimize the harm. On cross examination, trial counsel elicited testimony from the bondsman that the information petitioner initially provided to the bondsman was truthful. The bondsman explained the information only became inaccurate after petitioner

fled because petitioner failed to update the information.

It is also not clear such information had any effect on the jury. The failure to update bond information was eclipsed by the fact that petitioner fled the jurisdiction and petitioner's failing to update the bond information merely supported that fact. The damaging evidence was petitioner's flight to avoid prosecution. The only conceivable negative effect of this bond information evidence is that it might have caused the jury to question petitioner's truthfulness, but petitioner's truthfulness was not at issue. Petitioner did not testify at guilt/innocence and there was no evidence offered during guilt/innocence which was dependent on petitioner's truthfulness. Petitioner has failed to demonstrate this evidence caused him prejudice at guilt/innocence.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's fifth subpart is without merit.

### 6. Right to Silence

Petitioner argues trial counsel performed ineffectively by opening the door to evidence of petitioner's silence during and after arrest. During counsel's cross examination of Deputy Richard Beals, the officer who arrested petitioner at the airport, trial counsel elicited testimony that when petitioner was first arrested he was "cooperative" until the arresting officer asked him about his aliases. At that point the officer testified that petitioner "became somewhat uncooperative verbally." Trial counsel concluded his cross examination by asking the arresting officer if he was aware of an accused's right to not incriminate himself. On redirect examination, the prosecutor elicited from the officer that petitioner "became less responsive to . . . questions." Petitioner contends trial counsel was ineffective for opening the door to the arresting officer's

last statement, that petitioner became less responsive.

It is not clear that petitioner actually invoked his right to remain silent or was, in fact, silent during his initial apprehension and booking. According to the testimony of Beals, petitioner was "uncooperative" and "less responsive." Neither "uncooperative" nor "less responsive" necessarily indicate silence. Both could indicate petitioner continued speaking with the officer but was uncooperative or gave non-responsive verbal answers. While testimony regarding statements made post-arrest, but before *Miranda* warnings are given could arguably be objectionable, the record does not indicate when *Miranda* warnings were given. There is no evidence of record showing petitioner invoked or utilized his right to counsel or to remain silent, thus there is no evidence of a constitutional violation.

Even if trial counsel did open the door to questions about petitioner becoming less responsive, petitioner has not shown he was prejudiced. The exchange between petitioner and the deputy was not related to questions regarding the crime of which he was convicted. The questions related to his travel aliases and his use of the initials "R.W." Silence in this instance would merely show the use of aliases, which in turn would only show that petitioner had fled the jurisdiction. The jury was already aware of his flight and his use of aliases in that regard.

Petitioner cites *White v. Thaler*, 610 F.3d 890, 900 (5th Cir. 2010) for the proposition that opening the door to questions about post-arrest silence renders counsel's representation ineffective. In that case, the defendant waived his 5th Amendment right to not testify and took the stand in his own defense. His trial counsel then asked him whether he had told the police his side of the story. *Id.* When the prosecutor cross examined White he asked extensive questions about his post arrest-silence and then made his post-arrest silence a point of emphasis in closing

statements, arguing his silence in the face of police questioning meant he was untrustworthy.  *Id.*
On appeal, trial counsel filed an affidavit saying he had no strategic reason for opening the door
to the evidence.  *Id.*  at 900.

This case is distinguishable.  In *White*, the door was opened for the prosecutor to directly
attack the defendant's alibi.  Here, the testimony was relatively trivial and concerned only Cook's
mode of travel and the possible use of certain aliases.  Also, in this case, Cook's trial counsel had
a strategic reason for his cross examination.  Counsel was able to elicit testimony that Cook
cooperated with the police by coming back to the United States voluntarily and allowed himself
to be arrested without resistance.  The only negative testimony this opened the door to was that
he "became less responsive."

Petitioner also cites *Winn v. State* in support of this point.  871 S.W.2d 756 (Tex.
App.–Corpus Christi 1993, no pet.).  In *Winn*, the defense attorney admitted a tape recording of
the defendant's police interview.  *Id.* at 764.  During the police interview, Winn invoked his right
to silence and counsel *in response to questions concerning the crime*.  *Id.*  The jury, then, was
able to see the defendant's response (or lack of response) to questions about the crime and draw
conclusions from his silence.  The court also found the tape was prejudicial because of the
defendant's repeated use of profanity.  Winn also "appeared emotionless and unconcerned about
[the victim]."  *Id.*  Later, during the habeas proceeding, trial counsel was unable to explain how
the video tape was helpful to the defendant.  The court ruled that defense counsel was deficient
for admitting the video tape, the totality of which was unhelpful to defendant.

Unlike *Winn,* Cook's statements were more helpful than unhelpful.  His initial return to
the United States and cooperation with the police helped his case, so it was valid trial strategy to

question the arresting officer on the subject.  Likewise, petitioner's uncooperativeness was not in response to questions directly related to the crime he was accused of, and no other harmful evidence was admitted through the "opened door."

On June 4, 2014, petitioner filed a notice of additional authority, citing *Ex Parte Skelton*, 434 S.W.3d 709 (Tex. App.—San Antonio 2014, pet. ref'd).  Respondent failed to file a response to petitioner's submission.

*Skelton* is distinguishable from petitioner's case because the defendant's invocation in *Skelton* was referenced and reemphasized extensively.  On direct examination, the prosecutor asked seven different questions relating to the defendant's invocation of her right to remain silent.  Then, on cross-examination, defense counsel extensively questioned the witness regarding defendant's invocation. In fact, the cross-examination was so extensive that the San Antonio Court of Appeals concluded, "[C]ounsel's emphasis of Ranger Smith's testimony was possibly more damaging than the prosecution's initial inquiry."  *Id*. at 724.  The root of the ineffectiveness was not the references to the invocation of the right to counsel and/or to silence.  As the San Antonio court explained, counsel in *Skelton* was ineffective because the credibility of the defendant was "the crux of the defense", and counsel's highlighting of defendant's invocation directly undermined that defense.  *Id.* at 724.

Petitioner Cook did not testify and his credibility was not directly at issue.  Instead, the victim's credibility was a hotly contested issue.  Further, the comment that petitioner became "less cooperative" did not involve the sexual assault charge, and, as previously set out, trial counsel had a valid strategic purpose in emphasizing petitioner's cooperativeness in voluntarily returning to the United States.

Cook has failed to show how the cases he cited demonstrate prejudice in his case. In those cases, the prejudice was obvious. Defense counsel in *White* opened the door for the prosecutor to attack White's credibility as it related to his alibi. In *Winn,* defendant invoked his rights when faced with questions concerning the crime he was on trial for, and the recording disclosed other negative evidence. In *Skelton*, defendant's invocation of the right to silence (and counsel) reflected poorly on defendant's truthfulness, the primary issue in the case. Nothing of similar magnitude was implicated by opening the door or arguably referencing petitioner's unresponsive or uncooperative answers. Given the amount of other evidence against Cook, this Court cannot find "there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different." *Creel*, 162 F.3d at 395.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's sixth subpart is without merit.

*7. Failure to Object to or File Motion in Limine to Exclude Portion of Phone Call Where Petitioner Admits Drug Use*

In his seventh subpart, petitioner claims counsel was ineffective for failing to object to or file a motion in limine to exclude a portion of a recorded phone call where petitioner mentioned using drugs in the past.

Even if counsel erred by failing to object to that portion of the tape, petitioner was not harmed by the evidence. The mention of the drug use was very brief and referred to no specifics, such as past drug use, what drugs were used, the amount, the frequency, or anything else that would indicate he was anything more than a casual past user. Given the gravity of the charges petitioner was convicted of—aggravated sexual assault of a child— a passing reference to what could, at most, be described as past recreational drug use was not prejudicial.

In an affidavit, trial counsel asserts his trial strategy with regards to the tape was to object to the entire recording on two grounds. The first was that the original recording was lost, and there was no evidence the recording used at trial was a verbatim copy of the original. The second ground was that the victim was an agent of the state and petitioner was not given *Miranda* warnings. Trial counsel explains that once he lost on these grounds, he chose to not object to the portions of the tape discussing drug use because he felt they were insignificant in relation to the severity of the crime with which petitioner was charged. Counsel's strategic reason for not objecting was reasonable, and even if it now appears wrong in hindsight, this error was not so strategically wrong that it warrants federal relief.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's seventh subpart is without merit.

For the reasons set out in regards to subparts one through seven, petitioner's first ground, alleging ineffectiveness of trial counsel, should be denied.

V.
## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second ground petitioner claims he received ineffective assistance of counsel on appeal because appellate counsel: (1) failed to raise the issue of trial court error with regards to denial of admission of evidence of past sexual abuse of the victim by another person and (2) failed to raise the issue of trial court error where the trial court singled out evidence of flight.

A defendant has a constitutional right to effective assistance of counsel on first appeal. *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000). As with claims of ineffective assistance of trial counsel, where a petitioner argues counsel failed to assert or fully brief a particular claim on appeal, he must meet both prongs of the Strickland test, i.e. he must show his attorney's

performance was both deficient and prejudicial. *Id.* (citing *Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)).  Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064.  An appellate attorney need not raise every nonfrivolous ground available. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006).  A reasonable attorney may make an informed decision that certain avenues will not prove fruitful.  *Id.*  Counsel's performance is prejudicial only if, but for the appellate attorney's unreasonable failure to raise an issue, the defendant would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

### 1.  Failure to Raise Trial Court Error for Refusal to Admit Evidence from 1991 Sexual Assault Examination

In the first subpart of this claim, Cook contends the trial court erred by excluding evidence from a sexual assault exam performed on the victim in 1991.  The 1991 exam was performed after allegations arose that the victim's step father had sexually assaulted her.  The 1991 exam uncovered evidence of a small tear in the victim's hymen along with a healed tear on the victim's fourchette.  Initially, the trial court held the evidence was inadmissible under Texas Rule of Evidence 412(b), which excludes evidence of specific instances of a victim's prior sexual conduct in sexual assault cases.  During an *in camera* hearing,  petitioner's trial counsel sought to have the exam admitted under Texas Rule of Evidence 412(b)(2)(A), which allows such evidence if it "is necessary to rebut or explain scientific evidence offered by the state."  Trial counsel argued the evidence would help explain the evidence from the sexual assault nurse, which indicated the wearing away of the victim's hymen was consistent with multiple penetrations of the victim's vagina.  Upon further development of this evidence, however, it became clear the 1991 examination was neither competent nor relevant evidence as to the 2003 examination

because the testimony was that the only way the tears exhibited in the 1991 examination would result in the almost complete wearing away of the hymen as found in the 2003 examination would be if later, additional penetrations of the victim's vagina occurred. In any event, trial counsel abandoned the argument that the evidence was admissible under 412(b)(2)(A) and instead argued it was admissible to impeach the victim's statement that nothing like the sexual assault by petitioner had ever happened to her before. The trial court ruled such was not a purpose for which the evidence could be admitted, and the evidence was not allowed. The issue was not raised on appeal, and petitioner claims appellate counsel was ineffective for not presenting it. Petitioner contends he was entitled to present evidence of the 1991 sexual assault examination because the hymenal tears present in that investigation could have contributed to the condition of the hymen as it was in the 2003 exam. Appellate counsel is not ineffective, however, for failing to raise every non-frivolous claim. *Amador,* 458 F.3d at 410. Review of the trial record does not indicate raising the issue would have been fruitful.

Petitioner's theory that the abuse observed during the 1991 exam contributed to the abuse seen in the 2003 exam is not supported by the trial evidence. The 1991 exam would not be competent to rebut or explain the scientific evidence from the 2003 exam, that is, that some event or series of events occurred between 1991 and 2003 which caused additional and/or continued wearing away of the hymen. 3 RR 242-43. As the sexual assault nurse explained in her testimony, the finding that additional penetrations occurred subsequent to the victim's 1991 sexual assault was *supported* by the 1991 exam. The nurse in the 1991 exam found that the victim had a mostly intact hymen, with only a small .25 centimeter tear at six o'clock and a healed .5 centimeter tear to the fourchette. 3 RR 241. In the later, 2003 exam, the hymen

showed signs of repeated, additional penetrations with only a "hymenal rim" from six o'clock to eight o'clock. *Id.* The nurse testified there was no way the additional wear on the hymen found in the 2003 examination could have been caused by the tear found in the 1991 examination.  3 RR 247.  The SANE nurse testified the results of the 2003 exam were consistent with repeated penetrations having occurred at some point between 1991 and 2003, a period encompassing the time during which petitioner was alleged to have sexually assaulted his daughter. *See id.* Thus, the results of the 1991 exam do not explain the results of the 2003 exam and do not exculpate petitioner because the 1991 results are not inconsistent with the state's claim that petitioner repeatedly penetrated the victim.  Petitioner neither points to nor offers any scientific evidence that would support the theory that the abuse found in the 2003 examination could have been caused by the alleged assault that gave rise to the tear found in the 1991 examination.   Nor does petitioner cite any evidence for the contention that the tear in the 1991 examination could have eroded to the extent observed in the 2003 examination without there having been additional penetrations.

Petitioner states, "the excluded testimony also was admissible to rebut the impression that petitioner was responsible for the damage to the victim's hymen, as she told O'Neal that she had not previously had sex." It is not clear what petitioner is claiming here.  The case cited by petitioner, *Ex Parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011), deals with convictions procured through the use of false testimony.  There is no evidence in this case that any false testimony was used.  No evidence was presented of record showing that the victim "had

. . . previously had sex", thus there is no evidence such testimony was false.[1]

Petitioner has failed to show the evidence was admissible under Texas Rule of Evidence 412(b)(2)(A) because petitioner has failed to show the testimony was "necessary to rebut or explain scientific or medical evidence offered by the State." Given the wide range of discretion given to the trial court regarding admission of evidence, *See Amador v. State*, 275 S.W.3d 872, 878-79 (Tex. Crim. App. 2009), and given that appellate counsel thoroughly researched the issue, appellate counsel was not ineffective for failing to raise the issue.

Even if appellate counsel had been deficient, petitioner has not demonstrated prejudice. Texas courts give great discretion to the trial court. A trial court abuses its discretion only if its decision to not admit certain evidence lies outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Rulings will be upheld on appeal if the evidentiary ruling is supported by the record and is correct under any theory of law applicable to the case. *Amador*, 275 S.W.3d at 879. Trial judges are given wide discretion in determining the admissibility of evidence. *United States v. Medel*, 592 F.2d 1305, 1314 (5th Cir. 1979). Further, even if the evidence was "necessary to rebut or explain scientific or medical evidence offered by the State" under Texas Rule of Evidence 412(b)(2)(A), a judge must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tex. R. Evidence 412(b)(3). The trial court could have reasonably determined that the probative value was outweighed by unfair prejudice and the trial judge's exclusion of the 1991 evidence was reasonable. The trial court was acting within the zone of reasonable disagreement when it excluded the evidence because

---

[1] If petitioner is understood to be arguing the results of the 1991 exam contradicted the victim's statement she had never had sex, it should be pointed out that the victim was less than three years' old at the time and likely had no memory of the incident. Additionally, there is no evidence that the abuse suffered by the victim constituted "sex" in any normal sense of the word.

the court could have reasonably decided the probative value of the evidence was outweighed by the prejudice the evidence would cause by confusing the issue for the jury. Thus, even if appellate counsel had raised this issue, petitioner has not shown he would have prevailed on appeal.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. The first subpart of petitioner's second issue should be denied.

*2. Trial Court Instructing Jury to Consider Flight Evidence as Consciousness of Guilt*

Petitioner alleges appellate counsel was ineffective for failing to raise the issue of improper jury instruction. As noted by petitioner's first appellate counsel in his state habeas affidavit, petitioner's claim is confusing because *no specific instruction regarding flight was given*. What petitioner appears to be arguing is that while no specific mention of flight is made in the jury charge, this Court should read the general reference to "extraneous offenses" as setting out flight for special consideration.

The charge does indeed include a generic statement allowing the jurors to consider extraneous offenses if they find the petitioner committed such offense beyond a reasonable doubt. Petitioner argues that the instruction given, while not improper generally, is improper in this case by implication. Petitioner complains that because flight was the only extraneous offense presented at trial, the charge emphasized flight by offering an instruction on extraneous offenses. He argues that the combination of the extraneous offense instruction and prosecutor's comments on the flight evidence created an impermissible jury instruction that inappropriately singled out a certain piece of evidence. Petitioner argues that appellate counsel erred by failing to raise the issue because the instruction "was erroneous because it impermissibly singled out

evidence of flight in such a way that the jury could have given it heightened consideration." Pet. Brief at 33. He claims the instruction "bolstered the prosecutor's argument that he fled because he knew he was guilty." He argues appellate counsel's position that the instruction was proper because it properly referred to extraneous offenses generally, and not flight specifically is "disingenuous and not supported by the record."

Petitioner, however, has not provided the Court any authority for his contention that a generic extraneous offense charge "singles out specific evidence." Instead he argues that a permissible generic extraneous offense charge combined with permissible jury argument somehow creates an impermissible jury instruction. Without a jury instruction regarding how to treat extraneous offense evidence, however, there would be a risk the jury might consider extraneous offense evidence in an impermissible way, causing harm to the defendant. The extraneous offense instruction was necessary.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief. Petitioner's second subpart is without merit.

For the reasons set out herein in regards to subparts one and two, petitioner's second ground, alleging ineffectiveness of appellate counsel, should be denied.

## V.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner RANDY WAYNE COOK be DENIED on the merits.

VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation denying the Petition for Writ of Habeas Corpus to each party by the most

efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___3͠n͠____ day of March 2015.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).